373 A.2d 1345
John Robert WOODS and Anthony J.
Pivirotto, Appellants,

v.

Gerald PECKICH, Arthur Silverman, The General Tire and Rubber Company, an Ohio corporation, and A. M. Byers Company, an Ohio corporation, Appellees (two cases).

Supreme Court of Pennsylvania.

Argued Sept. 22, 1975.

Decided June 3, 1977.

Stanley W. Greenfield, Greenfield & Minsky, Pittsburgh, for appellants.

H. Yale Gutnick, Roger Curran, Rose, Schmidt & Dixon, Robert E. Wayman, Pittsburgh, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

MANDERINO, Justice.

This case represents three appeals from decrees of the Court of Common Pleas of Beaver County. The first decree released 18.698 acres of industrial land from a previously filed *lis pendens*. The second decree denied a motion for a protective order filed by appellants in connection with a court ordered deposition. The third decree granted appellees' motion for a judgment of *non pros with prejudice* as a result of the appellants' failure to be deposed at a court ordered deposition.

The appellants, John Robert Woods and Anthony J. Pivirotto, instituted this action by filing a complaint in equity in which they alleged that they were in partnership with appellees, Gerald Peckich and Arthur Silverman, who had entered into an agreement to purchase certain industrial acreage (175 acres) in Beaver County from appellee A. M. Byers Company (Byers), a subsidiary of appellee, The General Tire and Rubber Company. The appellants also alleged that appellees Peckich and Silverman had assigned their rights to a third party who was to salvage materials located on the property, develop some of the property, and deliver title to approximately ninety acres to appellees Peckich and Silverman. The appellants also joined as defendants various other parties whom they alleged were to participate in either purchasing, leasing or financing portions of the industrial acreage. The appellants sought an injunction against all defendants requesting in essence that all contemplated transactions be stopped, that the sales agreement be rescinded, and that the court order a new agreement which would include the appellants.

The equity action was filed and indexed as a *lis pendens* against the industrial acreage. A motion to dismiss as to certain defendants was filed and was granted as to all defendants except the appellees, Peckich, Silverman,

Byers, and Byers parent company, The General Tire and Rubber Company. A consent order was then entered into by the parties which released a portion of the property from the *lis pendens*. The order, in effect, struck the *lis pendens* permanently as to fifty acres that were not involved in the action, and also struck the *lis pendens* permanently as to approximately thirty-five acres which was to be leased to Levinson Steel Company. As to the remaining ninety acres, the *lis pendens* was suspended solely for the purpose of permitting the necessary conveyances, leases or agreements to ultimately vest an interest in Peckich and Silverman.

Subsequent to the consent order, the appellees filed a petition to approve a proposed modification of that order with respect to the suspension of the *lis pendens*. The appellees alleged that as a result of this action and various actions filed in Allegheny County they were unable to effect the conveyances required by the agreements and the prior consent order. *See e. g. Woods v. Peckich*, 463 Pa. 274, 344 A.2d 828 (1975). To reduce and mitigate any damage caused by those actions, the appellees proposed certain modifications of the consent order. The court entered a decree on July 26, 1976, approving the requested modification and, in effect, removed the *lis pendens* from 18.689 acres of the ninety acres. At the same time the appellees presented a motion for sanctions requesting that appellants be ordered to submit to depositions. The court directed that appellants Woods and Pivirotto appear for depositions at 10:00 a. m. and 11:00 a. m., respectively, on August 1, and further directed that their failure to appear would result in a dismissal of the action. At 9:29 a. m. on the morning of the scheduled depositions, the appellants, pro se, filed a motion for a protective order alleging (1) inability to obtain counsel, (2) undisposed of preliminary objections to appellees' counterclaims, and (3) that the depositions were sought in bad faith. The appellants appeared at the

scheduled deposition but refused to be deposed pending a ruling on their request for a protective order.

The appellees then presented a motion for judgment of non pros and dismissal of the action with prejudice. The court entered decrees striking the motion for protective order and granting appellees' motion for non pros and dismissal of the action with prejudice.

In view of our ultimate disposition of the issues in this case, we may assume, without deciding, that in ruling on the motion for protective order, the court correctly concluded that the simultaneous filing of preliminary objections to a counterclaim, along with a motion for a protective order alleging those undisposed of preliminary objections as the basis for a protective order, would not entitle the appellants to the protective order. We may also assume, without deciding, that the court correctly concluded that a bald assertion of bad faith, without more, would not entitle the appellants to a protective order. The appellants' allegation that they were unable to obtain counsel, however, presents a more serious problem. In ruling on this allegation, the court concluded that it could not believe that the appellants were unable to obtain counsel. The court went on to note, however, that the appellants are personally known to each and every judge of Allegheny County, Civil Division and the Federal District Court for the Western District of Pennsylvania by reason of the multitude and nature of their litigation. Their litigation was said by the trial court to include " 'writing a book' on dilatory tactics, thwarting depositions, tortious abuse and malicious use of process . . ." From the record before us, we have no basis for agreeing or disagreeing with the trial judge's conclusions. It seems, however, that if that description fairly represents the state of affairs, it is entirely plausible that counsel would be difficult to obtain.

More importantly, the record does not indicate any pattern of dilatory tactics by the appellants in *this* case.

Less than four months transpired between the original filing of this law suit on April 18, 1974 and the trial court's decree on August 5, 1974 denying appellants' motion for a protective order and dismissing their complaint with prejudice. Appellants were represented by counsel when the complaint was filed and the docket entries reveal that proceedings occurred expeditiously during the first two months. On June 13, 1974, about two months after the filing of the complaint, new counsel entered an appearance for appellants and on the same day filed a praecipe for a voluntary discontinuance of the action. On June 14, 1974, one day *after* appellants filed their praecipe, they received a notice from appellees of depositions to be taken on June 21, 1974. Since appellants had already filed their praecipe for voluntary discontinuance when they received the notice of depositions, we find nothing dilatory in their failure to prepare for those depositions. It was not until June 20, 1974, seven days after the filing of the praecipe for discontinuance and one day before the scheduled depositions, that the trial court, without any request from any of the parties, issued a decree striking the voluntary discontinuance. Under these circumstances, we find nothing unreasonable in appellants' request to the appellees that the depositions scheduled for June 21, 1974 be canceled.

On July 5, appellees sent another notice to appellants that depositions were to be taken on July 17, 1974. Appellants asked that these depositions also be canceled and they were. The record does not indicate the reason for their request. Eight days later, on July 25, 1974, new counsel who had originally filed the praecipe for voluntary discontinuance was given permission by the court to withdraw his appearance. No reason appears in the record as to why counsel withdrew. One day after the court gave permission for appellants' counsel to withdraw, the appellees presented their petition for a modification of the original consent order between the parties. Appellants, who had been notified that the petition

would be presented, appeared in court, requested the trial judge to disqualify himself, and told him that they were without counsel and not prepared to proceed. In spite of the fact that the trial court had granted permission to appellants' counsel to withdraw on the previous day, it ordered that the hearing proceed and denied appellants' requests. At the conclusion of the hearing, the court ordered the modification releasing 18.698 acres from the *lis pendens*. At the same hearing, the court ordered the appellants to appear for depositions six days later on August 1, 1974. On that date appellants did appear, but informed appellees that they would not proceed until they had obtained counsel and also informed appellees that a protective order had been filed earlier that morning.

We cannot conclude on the basis of the above facts that appellants were engaging in dilatory tactics. Every delay in a law suit does not indicate dilatory tactics. In this case, except for the last seven days prior to the striking of the protective order and the dismissal with prejudice, appellants were represented by counsel continuously since the law suit was filed.

We conclude that the trial court abused its discretion in not providing the appellants with a reasonable period of time to obtain counsel and proceed with depositions and other necessary proceedings. Under these circumstances, we conclude that it was error for the court to strike the motion for a protective order without allowing the appellants a reasonable opportunity to seek the representation of counsel.

We must also conclude that the entry of the decree dismissing the action with prejudice was error. As we stated in *Rapoport v. Sirott*, 418 Pa. 50, 209 A.2d 421 (1965):

"The entry of a default judgment by way of sanction for failure of a party to appear for the taking of

his deposition is a drastic remedy and should be entered only in the clearest of cases. *Unless the failure of party to appear for the taking of a deposition is wilful, i. e. deliberate and intentional,* and his duty to appear is clear and the record clearly and unequivocally reveals such to be the case, a default judgment should not be entered."

As previously noted, the record in this case does not reveal a deliberate and intentional refusal to be deposed. On the contrary, the appellants relying on the Pennsylvania Rules of Civil Procedure filed their motion for protective order, and awaited a ruling thereon prior to being deposed. Rule 4013 of the Pennsylvania Rules of Civil Procedure provides in part:

"The filing of a motion or application under this chapter shall *stay* the proceedings with respect to the depositions or discovery to which the motion or application is directed  .  .  .." (Emphasis added.)

The appellees contend that the motion for protective order filed in this case did not stay the deposition proceeding since the motion was filed within one hour of the scheduled deposition and thus not "seasonable" within the meaning of Rule 4012(a) providing for protective orders. "Seasonable" is not defined in the Rule. Even if we were to conclude, however, that the motion was not "seasonable" within the meaning of Rule 4012(a), this does not preclude the consideration of the motion as presented under Rule 4012(b) "at any time during the taking of a deposition." Thus, even assuming that the motion was not timely under Rule 4012(a), it was timely under Rule 4012(b). The only consequence of filing under Rule 4012(b) is that the moving party may be required "to pay such expenses including [reasonable] attorney's fees as the court may deem reasonable." The filing of the motion for protective order, automatically stays a deposition unless there is evidence that it was filed for the purpose of delay or harassment. The record

does not sustain such a conclusion. The court's decree dismissing the action with prejudice for failure to be deposed was error and accordingly is vacated.

The final issue to be considered here is whether the court erred in striking the *lis pendens* from approximately 18.698 acres of the ninety acres.

As we stated in *Dice v. Bender*, 383 Pa. 94, 97–98, 117 A.2d 725, 727 (1965):

> ". . . In short, being a creature not of statute but of common law and equity jurisprudence, the doctrine of lis pendens is wholly subject to equitable principles. Thus, if a *plaintiff* were to *delay unreasonably* in the prosecution of his claim, or if the operation of the doctrine should prove to be *harsh* or *arbitrary* in particular instances, equity can and should refuse to give it effect, and, under its power to remove a cloud or title, can and should cancel a notice of lis pendens which might otherwise exist." (Emphasis added.)

Appellees' arguments in support of the trial court's modification of the consent order concerning the *lis pendens* are similar to their arguments as to the other two orders. They contend, in effect, that the appellants' conduct prior to the granting of the modification order indicates unreasonable delay by the appellants. As previously noted, the record does not sustain such a conclusion. They also contend that they have sustained damages as a result of litigation concerning the ninety acres. This is true, however, as to any law suit and is not a reason for releasing property from a *lis pendens*. They further contend that the striking of the *lis pendens* did not conflict with any interest of the appellants which was apparent to the trial court. We have noted, however, that the hearing on the modification took place one day after the trial court granted appellants' counsel permission to withdraw. Yet, the trial court did not provide appellants with a reasonable opportunity to obtain other

counsel. Although the quick resolution of issues is to be encouraged, it can not be done at the expense of denying a party the reasonable opportunity to be heard with the assistance of counsel. The court should have given the appellants a reasonable opportunity to seek counsel. Failure to do so was error. Accordingly, the court's decree striking the *lis pendens* as to the 18.689 acres is vacated.

The decrees of the trial court are vacated and the matter remanded for proceedings consistent with this opinion. Each party to pay own costs.

JONES, former C. J., did not participate in the decision of this case.

NIX, J., concurred in the result.

POMEROY, J., filed a dissenting opinion.

POMEROY, Justice, dissenting.

I read the tangled and confusing record in this case differently than does the Court. I am not persuaded that the chancellor has committed an error of law or an abuse of discretion. Accordingly, I would affirm the decrees below.